Jennifer L. Loda (CA Bar No. 284889)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Phone: (510) 844-7136
Facsimile: (510) 844-7150
jloda@biologicaldiversity.org

Amy R. Atwood (OR Bar No. 060407)*
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Phone: (971) 717-6401
atwood@biologicaldiversity.org

Attorneys for Plaintiffs

*Seeking admission *pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY; SAN FRANCISCO BAYKEEPER;** <br><br> Plaintiffs, <br><br> v. <br><br> **DAVID BERNHARDT**, Secretary of the Interior; **MARGARET EVERSON**, Acting U.S. Fish and Wildlife Service Director; <br><br> Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1.  The Earth is undergoing an unprecedented human-caused extinction crisis. In a recent landmark report, an international scientific organization representing 130 member nations issued a dire warning that, without drastic action, approximately one million species worldwide

face extinction in the foreseeable future as a direct consequence of human-caused habitat loss and climate change, among many other threats.

2.  This case concerns eight such highly imperiled species in the United States: the longfin smelt (San Francisco Bay-Delta population), Hermes copper butterfly, Marron bacora (a plant), Sierra Nevada red fox, red tree vole (North Coast population), gopher tortoise (eastern population), Berry Cave Salamander, and Puerto Rico harlequin butterfly (collectively, "eight species"). The U.S. Fish and Wildlife Service ("FWS" or "Service") has found that all of the species warrant protection under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA" or "Act"), due to myriad threats to their continued existence, and yet it has refused to afford them the protections the ESA mandates. This refusal is predicated on FWS's finding that listing these species is "warranted but precluded" ("WBP") by the FWS's purported work on other, even higher priority species. Under the ESA, a WBP finding can only be made if FWS is in fact making "expeditious progress" to "add qualified species" to the lists of endangered and threatened species, and if the time and resources necessary to make such "progress" precludes work on other imperiled species. *Id*. § 1533(b)(3)(B)(iii)(II). In addition, to avoid listing an otherwise deserving species, FWS is required every year to make a fresh determination that listing the species is warranted, not warranted, or warranted yet continues to be precluded by the Service's expeditious progress in listing other species. *Id*. § 1533(b)(3)(C)(i).

3.  FWS is in flagrant violation of its ESA obligations with regard to the eight species at issue in this case. First, the species are being deprived of urgently needed ESA protections despite the fact that the Service is not making expeditious progress in listing other species. To the contrary, the Service is listing far fewer species under the Trump administration than the Obama administration was able to accomplish with an equivalent level of resources, and the rate

Complaint for Declaratory and Injunctive Relief                                                              2

of listing has now plummeted to the lowest level in decades. Second, and relatedly, the FWS is in ongoing violation of its obligation to publish new findings regarding whether listing of the eight species is, in fact, precluded by the Service's expeditious progress in listing other species—a finding the agency cannot lawfully make under the circumstances.

4. Plaintiffs Center for Biological Diversity ("Center")—the nation's leading organization devoted to the protection of endangered and threatened species—and San Francisco Baykeeper bring this lawsuit to challenge the Service's refusal to protect the eight species as a violation of the ESA and as agency action unlawfully delayed in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(1).

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

5. This Court has jurisdiction pursuant to section 11(g) of the ESA, 16 U.S.C. § 1540(g), and 28 U.S.C. § 1331 (federal question).

6. The U.S. District Court for Northern California is the proper venue for this action, pursuant to 28 U.S.C. § 1391(e). San Francisco Baykeeper is incorporated in California and its headquarters are located within this district. The Center is incorporated in California and maintains an office in this district.

7. Pursuant to Civil Local Rule 3-2(c), assignment to the San Francisco Division is appropriate because Plaintiff San Francisco Baykeeper is incorporated in California and maintains its headquarters in Alameda County. The Center is also incorporated in California and maintains an office in Alameda County.

## PARTIES

8. The Center is a non-profit corporation headquartered in Tucson, Arizona, with offices in various locations throughout the country, including Oakland, California. The Center

works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction. The Center is actively involved in species and habitat protection issues. The Center has more than 63,000 members throughout the United States and the world, including thousands of members in California.

9. The Center brings this action on its own institutional behalf and on behalf of its members, many of whom derive aesthetic, recreational, scientific, spiritual, and other concrete benefits from the eight species and their habitats. The Center has members that endeavor to observe these species in the wild and have ongoing interests in the species and their habitats. The Center has members who have concrete plans to visit these species' habitats and try to observe them in the wild. Defendants' actions have harmed and continue to harm the interests of the Center and its members in observing, studying, and otherwise enjoying the species and their habitats, and in obtaining and disseminating information regarding the survival of these species. The relief sought in this case would redress this harm. In addition, Defendants' ESA violations are subverting the Center's core mission to safeguard endangered and threatened species. As a consequence of Defendants' unlawful delay in protecting the species under the ESA, the Center has been compelled to expend resources (exclusive of this litigation) on alternative means of protecting the species, which has diverted time and resources that could and would have been spent on other activities that are central to the Center's mission to conserve imperiled species.

10. San Francisco Baykeeper ("Baykeeper") is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California. Baykeeper is dedicated to protecting the water quality of San Francisco Bay-Delta Estuary (Bay-Delta) for the benefit of its ecosystems and its human and wildlife communities. Baykeeper's approximately 1,500 members live and/or recreate in and around Bay-Delta, its tributaries, and

its shoreline. These members use the waters that provide habitat for longfin smelt for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes. For years, Baykeeper has advocated for policies and legal requirements that would protect longfin smelt in the Bay-Delta, including decreased water diversions, increased freshwater flows through the Bay-Delta, habitat restoration, and mitigation measures to reduce take of the imperiled species. Thus, the interests of Baykeeper and its members are directly, adversely, and irreparably harmed by FWS' continued failure to consider the listing of longfin smelt. This harm will continue until and unless this Court provides the relief prayed for in this Complaint.

11. Defendant David Bernhardt is the Secretary of the Interior. He has overall responsibility for overseeing the implementation of the ESA. Secretary Bernhardt is sued in his official capacity.

12. Defendant Margaret Everson is the Acting Director of the U.S. Fish and Wildlife Service, a federal agency within the U.S. Department of the Interior that has been delegated primary authority for day-to-day administration of the ESA with respect to terrestrial species. Acting Director Everson is sued in her official capacity.

## STATUTORY AND REGULATORY FRAMEWORK

11. Congress passed the ESA "to provide a program for the conservation of . . . endangered species and threatened species," and to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

12. The ESA provides for the protection of "species" that are listed as "endangered" or "threatened." 16 U.S.C. § 1533. A "species" is defined to "include[ ] any subspecies of fish or

wildlife or plants, and any distinct population segment ["DPS"] of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16). The Act defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range," and a "threatened species" as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(6), (20).

13. The Service must list a species as endangered or threatened based on the presence of any one or more of five factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). In making its listing determinations, the Service must use the "best scientific and commercial data available . . . " *Id*. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

14. For any species of wildlife listed as endangered, the ESA makes it unlawful for any person to, among other activities, "import any such species into, or export any such species from the United States," or to "take any such species within the United States." 16 U.S.C. § 1538(a)(1)(A), (B). The term "take" includes "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id*. § 1532(19). The Secretary also may, by regulation, extend these take and export prohibitions to species listed as threatened under the Act.

15. The ESA requires the FWS to "develop and implement . . . 'recovery plans' . . . for the conservation and survival of endangered species and threatened species . . . " *Id*. § 1533(f)(1). Such plans must include, among other items, "objective, measurable criteria

which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list" of endangered and threatened species. *Id*. § 1533(f)(1)(B)(ii).

16. When the Service lists a species as endangered or threatened, a "final regulation designating critical habitat of an endangered species or a threatened species shall be published concurrently with the final regulation" listing the species, unless the Service determines that "critical habitat of such species is not then determinable." *Id*. § 1533(b)(6)(C). In that event, the Service "must publish a final regulation" designating critical habitat "to the maximum extent prudent" within one year of the final listing decision. *Id*. The Act defines "critical habitat" to include the "specific areas within the geographical area occupied by the species, at the time it is listed . . . on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection . . . ." *Id*. § 1532(5)(A)(i).

17. Under section 7(a)(2) of the Act, "[e]ach Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification" of the species' designated critical habitat. *Id*. § 1536(a)(2). Under section 7(a)(1) of the Act, "all . . . Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes [of the ESA] by carrying out programs for the conservation of endangered species and threatened species listed pursuant to" section 4 of the ESA. *Id*. § 1536(a)(1).

18. Any "interested person" may petition the Service to list a species as endangered or threatened. *Id*. § 1533(b)(3)(A). Within 12 months after receiving a petition that is found to "present substantial information indicating that the petitioned action may be warranted," the Service must make one of three findings: (1) the "petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register," (2) "the petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action[;]" or (3) "the petitioned action is warranted, but . . . the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and . . . expeditious progress is being made to add qualified species" to the lists of endangered and threatened species, "in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which such finding is based." *Id*. § 1533(b)(3)(B).

19. If the FWS determines that a petition to list a species is "warranted but precluded" by other "pending proposals to determine whether any species" is endangered or threatened, the petition must, under the Act, "be treated as a petition that is resubmitted to the [FWS] . . . on the date of such finding." *Id*. § 1533(b)(3)(C)(i). Hence, the ESA requires FWS to make a new determination within one year as to whether the species should be listed or instead may again be denied the Act's protections on the grounds that its listing is "precluded" by other pending listing actions. *Id*. FWS commonly refers to new findings on previously filed petitions as "recycled petition findings," and they are included in a "Candidate Notice of Review" ("CNOR"), a document that, prior to the current administration, FWS published approximately every 12

months. The ESA provides that any WBP finding "shall be subject to judicial review." *Id*. § 1533(b)(3)(C)(ii).

20. CNORs list all species that the FWS considers to be "candidates" for listing. Candidates are species for which the Service has "on file sufficient information on biological vulnerability and threat(s) to support issuance of a proposed rule to list, but for which issuance of the proposed rule is precluded" by higher-priority listing actions. 81 Fed. Reg. 87,246, 87,248 (Dec. 2, 2016). Although the Service acknowledges that listing all "candidates" is "warranted" based on the best available data—i.e., such species need the protections of the Act to avoid near- or long-term extinction—candidates that are not listed do not receive the extensive safeguards of the Act.

## FACTUAL BACKGROUND

21. The most recent CNOR was published in the Federal Register on December 2, 2016. *See* 81 Fed. Reg. 87,246. Accordingly, it has been nearly two-and-a-half years since FWS published a CNOR with WBP findings for the eight species at issue (or any other species).

22. In the December 2, 2016 CNOR, FWS determined that, based on the available information, listing the eight species as endangered or threatened is warranted due to myriad threats to these species' continued existence. *See id*. at 87,257-58 (finding that the Bay-Delta DPS of the longfin smelt warrants listing because, among other reasons, the species' "numbers in the Bay-Delta have declined significantly since the 1980s[;]" the species' "abundance over the last decade is the lowest recorded in the 40-year history" of monitoring surveys; and the species continues to face "imminent" and "high" magnitude threats that "pose a significant risk to the DPS throughout its range"); *id*. at 87,255-56 (finding that listing of the red tree vole, a small rodent that lives in the tops of conifer trees, is warranted because, among other reasons, red tree

voles "have declined in the DPS and are largely absent in areas where they were once relatively abundant[;]" [o]lder forests that provide habitat for red tree voles are limited and highly fragmented[;]" and "[e]xisting regulatory mechanisms on State and private lands are not preventing continued harvest of forest stands at a scale and extent that would be meaningful for conserving red tree voles"); *id*. at 87,255-56 (finding that listing of the Sierra Nevada red fox is warranted because the population has been reduced to only "approximately 29 adults, including an estimated 14 breeding individuals[,]" and such a small population "could be extirpated by any of [a number of] population-level threats," including the adverse genetic effects of inbreeding, climate change, and "deleterious chance events such as storms or local disease outbreaks); *id*. at 87,256-57 (finding that listing the eastern population of the gopher tortoise is warranted because it is suffering from, among other threats, "habitat fragmentation, destruction, and modification (either deliberately or from inattention), including conversion of longleaf pine forests to incompatible silvicultural or agricultural habitats, urbanization, shrub/hardwood encroachment . . ., and establishment and spread of invasive species"); *id*. at 87,257 (finding that listing of the Berry Cave salamander is warranted because the species faces "imminent threats" to its continued existence, including urban development, water quality impacts, and "confined distribution of the species and apparent low population densities"); *id*. at 87,260 ("continu[ing] to find that listing [the Hermes copper butterfly] is warranted" due to ongoing threats to its continued existence); *id*. (finding that listing of the Puerto Rican harlequin butterfly is warranted because the population has been reduced to "around 50 adults in the northern karst region and fewer than 20 adults in the volcanic serpentine central mountains" of Puerto Rico, and that the "primary threats" to the species "are development, habitat fragmentation, and other natural or manmade factors such as human-induced fires, use of herbicides and pesticides, vegetation

management, and climate change"); *id*. at 87,263 (finding that the marron bacora—a dry-forest shrub in the island of St. John, U.S. Virgin Islands—"is threatened by the lack of natural recruitment, absence of dispersers, fragmented distribution, lack of genetic variation, climate change, and habitat destruction or modification by exotic mammal species").

23. While finding that ESA protection for each of the eight species is warranted, FWS also determined in its December 2, 2016 CNOR that listing was precluded by work on other listing activities. As the ESA requires, FWS's WBP determination included a finding that "we are making expeditious progress in listing qualified species." *Id*. at 87,252. The Service explained that "[i]n FY [fiscal year] 2016, we resolved the status of 97 species that we had determined, or had previously determined, qualified for listing[,]" and "[m]oreover, for 78 of those species, the resolution was to add them to the Lists." *Id*. The CNOR also set forth additional listing actions that had been taken in FY 2016, including "propos[als] to list an additional 18 qualified species." *Id*. The CNOR explained that many of these actions had been undertaken as a result of a settlement with the Center regarding the Service's backlog of candidate species warranting listing. *See id*. (explaining that "[b]oth by entering into the settlement agreement and by making progress towards final listing determinations for those species proposed for listing, . . . the Service is making expeditious progress to add qualified species to the lists").

24. Although the ESA requires FWS to announce new listing determinations regarding the eight species within one year following the December 2, 2016 CNOR—and, in particular, to issue proposed listing rules if listing remained warranted and the Service could not support findings that proposed rules were precluded by higher priority listings toward which FWS was purportedly making expeditious progress—the agency did not meet that statutory

Complaint for Declaratory and Injunctive Relief                                                                                                 11

deadline. To date, FWS has not issued any CNOR incorporating WBP findings since December 2, 2016.

25. Since the onset of the Trump administration in January 2017 and continuing until today, the FWS has not made expeditious progress in listing species. On the contrary, listing of species as endangered or threatened has largely ground to a halt. In contrast to the 78 species listed as endangered or threatened in FY 2016, in the last 26 months the FWS has managed to list only 17 species *in total*. This number pales in comparison to the progress on listing that was made not only during the Obama administration, but during prior administrations as well. For example, 234 species were listed as endangered or threatened during the George H.W. Bush administration and 522 species were listed during the Clinton administration.

26. In addition to publishing CNORs announcing formal WBP findings, the FWS has issued so-called "national listing workplans" setting forth the agency's intentions with regard to various listing actions over a number of fiscal years. In 2016, FWS developed such a workplan to address a backlog of more than 500 species awaiting listing determinations, including the eight candidate species. The workplan provided that proposed listing rules would be issued in fiscal years 2016, 2017, or 2018 for a number of species, including several of the species at issue in this lawsuit. The FWS, however, has failed to adhere to the schedules set forth in its own workplan and, of particular relevance, to date the Service has failed to issue proposed rules for any of the eight species, including those that the agency itself said would be the subject of proposed rules by now. Consequently, even according to the FWS's own prior proposed workplans, the FWS is not making "expeditious progress" in listing and is failing to move forward in listing the imperiled species at issue in a timely manner.

27. On information and belief, one reason why FWS has not issued a CNOR within the past two-and-a-half years is because the Service cannot lawfully make the expeditious progress finding that is necessary to invoke the WBP rationale for refusing to list species whose listing is both warranted and essential to avoid the species' extinction.

28. Since the last CNOR was published on December 2, 2016, and continuing to the present, FWS has had in its possession information indicating that ESA listing of the eight species is warranted because one or more of the statutory criteria for listing the species is satisfied.

29. By letter dated January 15, 2019, the Center formally put Defendants on notice, pursuant to the provisions of the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(C), that Defendants are in violation of the ESA by failing to publish a CNOR in a timely manner and by failing to move forward with listing of the eight species. To date, the Center has received no response to its notice, thus rendering this litigation necessary if the requirements and purposes of the ESA are to be effectuated.

## CLAIMS FOR RELIEF

## CLAIM ONE (ESA)

30. Defendants are denying vital ESA protections to the eight species in violation of Defendants' mandatory duties by maintaining their classification as warranted but precluded when (1) "expeditious progress" is not "being made to add qualified species" to the lists of endangered and threatened species, 16 U.S.C § 1533(b)(3)(B)(iii)(II); (2) the FWS has failed, within the time frames mandated by the ESA, even to publish any WBP finding for these species buttressed by a legally supportable expeditious progress finding, *id*. § 1533(b)(3)(C); and (3) the Service cannot under the circumstances make a legally supportable expeditious progress finding.

This violation is injuring, and will continue to injure, Plaintiffs and their members' concrete interests in these species.

## CLAIM TWO (ESA)

31.     By failing to publish any new findings regarding the eight species since the December 2, 2016 CNOR, the FWS is in violation of its mandatory duty under the ESA to make such findings at least once each year.  16 U.S.C. § 1533(b)(3)(C)(i). This violation is injuring, and will continue to injure, Plaintiffs and their members' concrete interests in these species.

## CLAIM THREE (APA)

32.     FWS failed to issue proposed listing rules for the eight species on the grounds that their listing is warranted but precluded even though (1) the FWS cannot lawfully support such a finding in view of the agency's ongoing failure to make expeditious progress in listing other species and (2) the FWS has not made any expeditious progress findings within the time frame mandated by the ESA. Defendants are therefore "unlawfully with[holding] and unreasonably delay[ing]" publication of the proposed rules in violation of the APA. 5 U.S.C. § 706(1).  This violation is injuring, and will continue to injure, Plaintiffs and their members' concrete interests in these species.

## CLAIM FOUR (APA)

33.     Defendants are "unlawfully with[holding] and unreasonably delay[ing]" new findings for the eight species by failing to issue a CNOR within the ESA-mandated timeframe, in violation of the APA. 5 U.S.C. § 706(1). This violation is injuring, and will continue to injure, Plaintiffs and their members' concrete interests in these species.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court issue an Order:

1.    Declaring that Defendants are unlawfully depriving the eight species of protection under the ESA;

2.    Ordering Defendants to publish proposed rules for the eight species according to a schedule to be fashioned by the Court;

3.    Ordering Defendants to issue a new CNOR within 30 days of the Court's order;

4.    Awarding Plaintiffs their attorneys' fees and costs; and

5.    Awarding Plaintiffs such other relief as the Court deems just and proper.

Dated:  May 23, 2019

Respectfully submitted,

 /s/ Jennifer L. Loda
Jennifer L. Loda (CA Bar No. 284889)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Phone: (510) 844-7136
Facsimile: (510) 844-7150
jloda@biologicaldiversity.org

Amy R. Atwood (OR Bar No. 060407)*
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Phone: (971) 717-6401
atwood@biologicaldiversity.org

Attorneys for Plaintiffs

*Seeking admission *pro hac vice*